UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **CARDILLO & SONS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  04-12496-JLT |
| ) | |
| **OFFICIAL SECURITY, INC.** ) | |
| **MRH INTERNATIONAL, INC.,** ) | |
| **DARRYL CRONFELD, and** ) | |
| **MARGARET R. CRONFELD,** ) | |
| ) | |
| **Defendants.** ) | |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

1. This is an action sounding in tort and brought by the plaintiff Cardillo & Sons, Inc. ("CSI" or the "Plaintiff") which seeks damages and other relief against the defendants Official Security, Inc. ("OSI"), MRH International, Inc, ("MRH"), Darryl Cronfeld ("Mr. Cronfeld") and Margaret R. Cronfeld ("Ms. Cronfeld") (collectively the "Defendants").  As indicated below, the parties are engaged in the security services industry and are direct competitors.  In particular, the parties have competed and continue to compete for contracts relating to the provision of security services at various assessment sites throughout the United States where the federal Transportation Safety Administration and its prime contractor conduct assessments of candidates for airport security positions.  Defendants, upon losing several contract bids to CSI over the course of the past two years, have engaged in a campaign of unfair and deceptive acts against CSI including, but not limited to defamation of CSI and its officers and/or employees, harassment of entities with which CSI enjoys advantageous and/or contractual

business relations and filing false reports with the government or government contractors. Defendants' took all acts willfully and maliciously and for the sole purpose of destroying CSI's business reputation in order to gain an unfair competitive advantage.

## THE PARTIES

2.      Cardillo & Sons, Inc. is a Massachusetts corporation with a principal place of business at 433 Broadway, Suite C, Everett, Massachusetts.  CSI is engaged in the security services industry.

3.      MRH International, Inc. is a Nevada Corporation with a principal place of business at 3534 Leor Court, Las Vegas, NV  89103.  MRH is engaged in the security services industry.

4.      Official Security, Inc. is a Nevada Corporation with a principal place of business at 3534 Leor Court, Las Vegas, NV  89103. OSI is engaged in the security services industry.

5.      Darryl Cronfeld is a Nevada resident who resides at 3534 Leor Court, Las Vegas, NV  89103.  Mr. Cronfeld if the President, Secretary and Treasurer of OSI and the Secretary and Treasurer of MRH.

6.      Margaret R. Cronfeld is a Nevada resident who resides at 3534 Leor Court, Las Vegas, NV  89103.  Ms. Cronfeld if the President of MRH.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as this action involves a controversy exceeding $75,000 in value, exclusive of interests and costs, between citizens of different states.

8.      This action is properly brought in this district pursuant to 28 U.S.C. § 1391(a)(2) as a substantial portion of the injury, events and/or omissions giving rise to this controversy substantially occurred in this judicial district.

## **FACTUAL ALLEGATIONS**

**The Post 9/11 Airport Security Industry**

9.      In the wake of the September 11, 2001 terrorist attacks, the federal government moved quickly to improve security throughout the nation, particularly at government sites and airports.

10.     Shortly after the September 11 attacks, the United States Transportation Security Administration ("TSA") "federalized" the airport security industry.

11.     The TSA, during the course of the following years, entered into contracts with various entities for the provision of security services and personnel on a large scale, to implement its plan to improve security and supply security personnel at the nation's airports.

12.     During 2003, the TSA entered into a prime contract with CPS Human Resource Services ("CPS") to undertake the massive task of soliciting, screening, testing, hiring and placing qualified security screeners and other personnel at the nation's airports.

13.     CPS is an independent, self-supporting government agency with principal offices located in Sacramento, California, Washington, D.C. and Madison, Wisconsin that provides recruitment, examination, testing, assessment, staffing and HR services to public agencies.

14.     Pursuant to TSA directives, CPS embarked upon an ambitious plan to establish hiring centers (the "Hiring Centers") near some of the nation's busiest airports to fill the daunting and continuous demand for the hiring of qualified security personnel. Until recently,

Hiring Centers were typically maintained on a sporadic and temporary basis. Most were operated for no more than several weeks at a time.

15. Recently, however, CPS has implemented a plan to establish over twenty permanent Hiring Centers throughout the nation to continuously recruit, screen, test, hire and place qualified security screeners and other personnel for placement at the nation's busiest airports.

16. In order to fulfill its obligations to the TSA, CPS, in early 2003, solicited bids and awarded subcontracts to various entities for the provision of specified services to be provided at the Hiring Sites.

17. It specifically awarded subcontracts to entities for the provision of the following services: personnel recruitment services; fitness for duty medical examinations, including drug and alcohol screening; fingerprinting and identification services; information management services; criminal background investigation services, and; security services for the protection of personnel and property at each Hiring Center.

**Competition for the CPS Security Sub-Contract**

18. During the course of 2003 and 2004 , CPS contracted with CSI, OSI, MRH and a number of other security subcontractors to provide security services at various Hiring Centers throughout the United States.

19. Competition for security subcontracts was often fierce as many firms vied for a limited number of assignments.

20. During 2003 and 2004, CPS came to heavily rely upon CSI for the provision of security services at various Hiring Centers due to CSI's commitment to duty and its superior service.

21.     By contrast, OSI and MRH, which once provided security for nearly 25% of the Hiring Centers operated by CPS saw the frequency of its assignments dwindle.

22.     Rather than focusing on improving its services and responsiveness to CPS's increasing demands, the Defendants engaged in a campaign to undermine and stifle their principal competitor – Cardillo & Sons, Inc. – through knowingly false, malicious and devious means.

23.     Recently, CPS announced that CSI would provide security services at all of the soon to be established permanent Hiring Centers.

24.     This announcement caused the Defendants to intensify their illicit campaign to destroy the competition and to coerce CPS to revoke its contract with CSI.

**Defendants Illegal Actions Towards CSI**

25.     During 2003 and 2004, the Defendants engaged in a moderate smear campaign of CSI designed to interfere with CSI's contractual and advantageous relationship with CPS.

26.     The Defendants actions included, but were no means limited to falsely informing CPS that CSI had engaged in criminal activities and falsely informing CPS that government agents had raided CSI's offices.

27.     Angered at losing the CPS subcontract to provide security services at some of the permanent Hiring Centers in 2005, the defendants intensified their malicious campaign.

28.     From their Las Vegas base, the Defendants sent numerous electronic mail messages to various CPS officials in Sacramento, California and Washington, DC, falsely asserting, among other things, that CSI had engaged in criminal conduct and, as a result of a pending investigation, may be unable to provide all promised services during 2005.  In fact, there

has never been a criminal investigation of CSI and CSI has never been hindered in any way from providing superior services to CPS.

29. The Defendants made several written and verbal threats to CPS officials demanding that CPS sever its contract with CSI. The Defendants specifically stated that they would file frivolous or false reports with government agencies designed to draw CPS into frivolous litigation that could threaten its contract with the TSA.

30. On November 16, 17 and 18, 2004 the defendant Darryl Cronfeld made false statements concerning CSI to officials with the Nevada Office of the Attorney General, Private Investigator's Licensing Board and other Nevada state officials. Mr. Cronfeld took such actions for malicious purposes unrelated to the Defendants' legitimate business interests.

31. From November 16 through November 22, 2004, Mr. Cronfeld continued to bombard CPS officials in Sacramento, California and Washington, DC with false and malicious statements relating to CSI in an attempt to entice CPS to sever its contracts with CSI.

32. Upon information and belief, on November 23, 2004, Mr. Cronfeld met with CPS officials in Washington DC and repeated numerous false and defamatory statements regarding CSI.

33. On January 7, 2005 the Defendants further intensified their illegal campaign against CSI.

34. Specifically, the Defendants, through Mr. Cronfeld, sent electronic mail transmissions to various individuals and entities in numerous states engaged in the security field. The e-mails were forwarded to numerous other individuals and entities in other states, including Massachusetts.

35.     In his January 7, 2005 e-mail Mr. Cronfeld urged recipients to engage in "an e-mail and telephone campaign to [CPS officials]" in an effort to harass CPS into severing or limiting its relationship with CSI.

36.     Mr. Cronfeld also urged recipients of his correspondence to file frivolous lawsuits in their states against both CPS and the Transportation Security Administration in an effort to harass those entities to sever or limit their relationships with CSI.

37.     Mr. Cronfeld informed all recipients willing to file such frivolous, baseless lawsuits that he was willing to pay all of the legal costs and fees associated with maintaining such legal actions.

38.     Upon information and belief, all of the actions taken by Mr. Cronfeld were taken with the knowledge and/or participation of Ms. Cronfeld.

39.     Mr. and Ms. Cronfeld's sole purpose in engaging in the above-referenced conduct was to interfere with CSI's advantageous and contractual relationship with CPS and other entities and to cause CPS and other entities to disregard their contractual and/or advantageous relationships and obligations to CSI.

40.     As a result of the Defendants' actions, CPS has announced that it is suspending its contract with CSI and is, instead, providing to Mr. Cronfeld an opportunity to "re-bid" the contract CPS had previously awarded to CSI.

## COUNTS

### COUNT I
**(Defamation)**

41.     CSI realleges and incorporates by reference paragraphs 1 through 40 of its Complaint.

42. Defendants knowingly uttered false and defamatory statements to third parties regarding CSI.

43. Specifically, Defendants, among other things, falsely informed CPS that: CSI had engaged in criminal activities; that government agents had raided CSI's offices, and; that CSI would be unable to provide services to CPS due to government investigations.

44. Mr. Cronfeld also made false statements to government officials or other persons or entities to induce such officials, persons or entities to hinder CSI's ability to do business. Upon information and belief, Ms. Cronfeld had knowledge of and assented to the making of such false and defamatory statements.

45. CSI has suffered severe damage as a result of these actions including, but not limited to, the loss of a lucrative contract with CPS, the diminution of its reputation in the business community and lost business revenue.

## COUNT II
**(Tortious Intereference with Contractual and/or Advantageous Business Relations)**

46. CSI realleges and incorporates by reference paragraphs 1 through 45 of its Complaint.

47. CSI enjoys an advantageous business relationship and a contractual relationship with CPS.

48. Defendants intentionally and wrongfully interfered with CSI's advantageous and contractual business relationship with CPS by attempting, without legal right or justification, to induce CPS to sever its contractual relationship with CSI.

49. CSI has incurred significant damage as a result of the Defendants' intentional interference with advantageous and contractual relations, including, but not limited to, the loss of

a lucrative business contract, damage to its reputation and costs associated with responding to false allegations relayed by the Defendants to CPS.

## COUNT III
### (Malicious Abuse of Process)

50.     CSI realleges and incorporates by reference paragraphs 1 through 49 of its Complaint.

51.     Defendants maliciously abused legal process against CSI by filing a false reports with government officials.

52.     Defendants illegally utilized legal process to cause CSI to expend significant resources in responding to the false reports.

53.     CSI has incurred significant damage as a result of the Defendants' malicious abuse of process, including, but not limited to damage to its reputation and costs associated with responding to the baseless allegations and other claims asserted by the Defendants.

## COUNT IV
### (Civil Conspiracy)

54.     CSI realleges and incorporates by reference paragraphs 1 through 53 of its Complaint.

55.     CSI enjoys an advantageous business relationship with numerous individuals and entities including CPS.

56.     Defendants intentionally and wrongfully interfered with CSI's advantageous and contractual business relationship with CPS by attempting, without legal right or justification, to induce CPS to sever its contractual relationship with CSI.

57.  Defendants solicited other individuals and entities to engage in illegal acts designed to destroy CSI's business reputation and to unlawfully harass CPS and the TSA to induce CPS to sever its contractual relationship with CSI.

58.  CSI has incurred significant damage as a result of the Defendants' solicitation of conspiracy and conspiracy, including, but not limited to, the loss of a lucrative business contract, damage to its reputation and costs associated with responding to false allegations relayed by the Defendants to CPS and others.

## COUNT V
**(Unfair or Deceptive Acts or Practices – M.G.L. c. 93A)**

59.  CSI realleges and incorporates by reference paragraphs 1 through 58 of its Complaint.

60.  Defendants are engaged in trade and commerce including, upon information and belief, trade or commerce in Massachusetts.

61.  Defendants have engaged in unfair and deceptive acts and practices in violation of M.G.L. c. 93A, §§ 9 and 11 by, among other things, knowingly filing false reports and complaints to government agents against CSI and intentionally and maliciously defaming CSI and interfering with CSI's contractual relationship with CPS.

62.  As a result of the Defendants' actions, CSI has suffered, and continue to suffer damages.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiff Cardillo & Sons, Inc. prays that this Court do the following:

a.  Enter judgment for the plaintiff Cardillo & Sons, Inc. and against the Defendants on all counts of this Complaint;

  b.  Award Cardillo & Sons, Inc. money damages based on the Defendants' defamation, interference with advantageous/contractual relations, abuse of process, civil conspiracy and other wrongful conduct;

  c.  Award Cardillo & Sons, Inc. money damages, treble damages and its costs and reasonable attorneys' fees based on the Defendants' unfair and deceptive acts and practices and other wrongful conduct;

  d.  Award Cardillo & Sons, Inc. its costs and expenses, including its reasonable attorneys' fees, incurred in this action; and

  e.  Award such other and further relief as the Court deems just and proper.

**THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

        Respectfully Submitted,

        CARDILLO & SONS, INC.

        By its attorneys:

         /S/ John F. Tocci
        John F. Tocci, Esq., BBO# 562139
        Merson & Lee, P.C.
        171 Milk Street, Suite 400
        Boston, Massachusetts 02109
        (617) 399-7800

Dated: January 12, 2005