UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2005 FEB -2 P 2: 38
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| CARDILLO & SONS, INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | **DOCKET NO.: 04-12496-JLT** |
| ) | |
| MRH INTERNATIONAL, INC., OFFICIAL) | |
| SECURITY, INC., DARRYL CRONFELD, ) | |
| and MARGARET R. CRONFELD ) | |
| ) | |
| Defendants ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTIONS TO DISMISS
FOR LACK OF JURISDICTION OVER THE DEFENDANTS, FOR IMPROPER
VENUE AND FOR FAILURE TO STATE CAUSES OF ACTION**

The Plaintiff filed a First Amended Complaint alleging that the Plaintiff and Defendants are competitors in the security services industry and in particular compete for contracts relating to the provision of such services to the Federal Transportation Safety Administration ("TSA") through TSA's prime contractor CPS Human Resource Services ("CPS"). This is a diversity action with venue allegedly under 28 U.S.C. §1391(a)(2)

There are five counts: Count I ("Defamation"); Count II (Tortious Interference with Contractual and/or Advantageous Business Relations"); Count III ("Malicious Abuse of Process"); Count IV ("Civil Conspiracy"); and Count V ("Unfair or Deceptive Acts or Practices").

The "Illegal Actions" of Defendants set out in paragraphs 25-40 essentially allege that the Defendants interfered with Plaintiff's contracts with CPS and defamed the

Plaintiff by falsely accusing the Plaintiff of criminal conduct. The Plaintiff does not deign

to say what were the criminal conduct charges nor attach any exhibits in elucidation.

The Defendants have filed three separate Motions to Dismiss:

1.  Motion to Dismiss for Lack of Jurisdiction over the Defendants (Rule 12(b)(2));

2.  Motion to Dismiss for Improper Venue, or In the Alternative for Transfer to the United States District Court for the District of Nevada (Rule 12(b)(3));and

3.  Motion to Dismiss all Counts for Failure to State Causes of Action (Rule 12(b)(6)

Also, filed herewith is the Affidavit of all Defendants.

If the Court finds no <u>in personam jurisdiction</u> the other Motions are moot. If the

Court does not dismiss on jurisdiction grounds and dismisses for improper venue then the

Motion to Dismiss for failure to state causes of action is similarly moot, subject to being

in the proper venue.

## ARGUMENT

**I.    <u>Motion to Dismiss for Lack of Jurisdiction Over the Defendants (Rule 12(b)(2))</u>**

In diversity cases, personal jurisdiction over a nonresident Defendant is governed

by the forum state's long arm statute. <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1387 (1st Cir.

1995). Massachusetts has a "long arm" statute which has been construed to "function as

an assertion of jurisdiction over the person to the limits allowed by the [Federal]

Constitution." <u>Tatro v. Manor Care, Inc.</u> 416 Mass 763, 771 (1994). Thus, there is a

single inquiry whether the exercise of personal jurisdiction comports with due process.

<u>Pritzker v. Yari</u>, 42 F.3d 53, 60 (1st Cir. 1994), <u>Ticketmaster - New York, Inc. v. Alioto</u>,

26 F.3d 201, 204 (1st Cir. 1994).

2

The Plaintiff alleges under "Jurisdiction and Venue" in paragraphs 7 and 8 of the Complaint that there is diversity jurisdiction under 28 U.S.C. §1332 (a)(1) between citizens of different States and venue is proper under 28 U.S.C. §1391 (a)(2) (which is misquoted or mis-paraphrased). Section 1391 (a)(2) provides for venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated."

In Foster Miller v. Babcock and Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995) it was held that the constitutional inquiry "implicates three distinct components, namely, relatedness, purposeful availment (sometimes called "minimum contacts"), and reasonableness:

> "First, the claim underlying the litigation must directly arise out of, or relate to, the Defendant's forum-state activities. Second, the Defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the Defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable."

The Plaintiff bears the burden of proving the existence of in personam jurisdiction. Ibid.

The Defendants do not have the necessary minimum contacts. They have not sent any representatives in to Massachusetts. Three Defendants (MRH International, Inc. ("MRH"), Darryl Cronfeld ("Darryl") and Margaret R. Cronfeld ("Margaret") have not entered into any contracts or transactions here. The fourth Defendant, Official Security, Inc. ("OSI") has had very limited contact with Massachusetts – six (6) days of work out of approximately 3000 days. The Defendants cannot be said "to have participated in the forum's economic life." See Affidavit of Defendants filed herewith.

As to relatedness, there can be no proffer by Plaintiff that it's claims arise out of or relate to Defendants' forum state (Massachusetts) activities. There are simply no such activities. See discussion, infra, on Plaintiff's M.G.L. C93A §11 claim about conduct primarily and substantially within Massachusetts. The Plaintiff's claims are really that of tortious impact on its Massachusetts based business. See the discussion, infra, by the Massachusetts Appeals Court in Darcy v. Hankle, 54 Mass. App. Ct. 846, 848 (2002) denying in personam jurisdiction under the long-arm statute section dealing with tortious injury, M.G.L. C223A §3(d). To meet the relatedness requirement, Plaintiff's cause of action must "directly arise" out of specific contacts between Defendants and the forum state. Fern v. Immergut, 55 Mass. App. Ct. 577, 583 (2002).

In assessing reasonableness under the Foster-Miller tripartite test the court must look to "fair play and substantial justice" as required by International Shoe Co. v. State of Washington 326 U.S. 310, 320 (1945). Five factors are considered:

> "(1) the Defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the Plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."

Foster-Miller, 46 F.2d at 150; Nowak v. Tak How Investments, Ltd. 94 F.3d 708, 712-713 (1st Cir. 1996).

It is difficult to see the interest of Massachusetts in adjudicating this dispute, despite the Defendants' burden of appearance here. The burden on Defendants is obvious as they have no Massachusetts base. This is not a forum non conveniens argument. Other factors need not be assessed as the Plaintiff cannot meet the minimum contacts

(purposeful availment) and relatedness tests. There is no perceptible social reason favoring Plaintiff under factors (4) and (5) supra.

This litigation is founded on a claim of specific personal jurisdiction over Defendants not a general jurisdiction claim that Massachusetts has authority to hear any claims against Defendants based on Defendants "continuous and systematic" contacts here. Helicopteros Nacionales de Colombie, SA. v. Hall, 466 U.S. 408, 414-416 (1984).

In Darcy v. Hinkle, 54 Mass. App. Ct. 846 (2002), a Massachusetts Plaintiff sued the New York Defendant for abuse of the process and malicious prosecution for instituting a larceny complaint in New York under quite dubious circumstances. The Massachusetts Appeals Court reversed the trial court dismissal for want of jurisdiction under M.G.L. C223A §3(d). That subsection provides for jurisdiction for:

> "(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth [.]"

None of the Defendants, including OSI, has regularly done business here or engaged in a persistent course of conduct here.

> "If the out-of-State wrong, however, causes shame, embarrassment, or loss of consortium in the forum State, that sort of injury constitutes the primary tortious injury in the forum State on which personal jurisdiction under G.L.c. 223A, §3(d), may rest. Noonan v. Winston Co., 135 F.3d 85, 92 (1st Cir. 1998). [Fn5] Out-of-State wrongs that cause loss of sales or business opportunity in the forum State have similarly been held to be direct tortious injury rather than consequential harm. Keds Corp. v. Renee Intl. Trading Corp., 888 F.2d 215, 218 (1st Cir. 1989). Buckeye Assocs., Ltd. v. Fila Sports, Inc., 616 F. Supp. 1484, 1493(1995). Perhaps closest to the case at bar on its facts is Rothstein v. Carriere, 41 F. Supp.2d 381 (E.D.N.Y. 1999). In that case the Defendant gave false statements to law enforcement officials in Washington, D.C., that resulted in the prosecution of the Plaintiff in New York. At all times, the Plaintiff Rothstein was in New York. The court observed that this was not a case of mere "resultant damages" in New York.... [T]he Defendants could reasonably foresee that making false statements to law enforcement officials for the purpose of instigating a criminal prosecution

would have consequences on Plaintiff in New York." Id at 385-386." Darcy v. Hinkle at 850.

The Plaintiff's allegations here are quite similar to the statements in Rothstein, cited supra.

However, as noted in Darcy, tortious impact does not end the inquiry; due process must be satisfied. In Darcy, the Defendant had done substantial business just across the border in Massachusetts and invoked the benefits and protections of Massachusetts law, thus making it fair to require him to defend in Massachusetts. Darcy at 851-852. The Defendants in this case have not availed themselves of "the benefits and protection of [Massachusetts] law." Hanson v. Denchla 357 U.S. 235, 253 (1958). The International Shoe standard of "fair play and substantial justice" is not satisfied.

The Plaintiff contends that the Defendants sent a single email concerning Plaintiff to a Massachusetts contractor. An isolated mailing does not satisfy the "purposeful availment element" of a due process specific personal jurisdiction evaluation. See the discussion in Memorandum and Order dated April 2, 2004 in First Act, Inc. v. Brook Mays Music Company C.A. #03-12020 - EH (Mass 2004), a copy of which is annexed hereto as Exhibit 1.

II.    **Motion to Dismiss (Rule 12(b)(3)) or, in the Alternative for Transfer to the District of Nevada under 28 U.S.C., §1406(a)**

Paragraph 8 of the Complaint alleges that "this action is properly brought in this district pursuant to 28 U.S.C., §1391(a)(2). . . ." That subsection in pertinent part allows for venue in diversity cases in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ."

The venue here is improper as no substantial part of the events giving rise to the claims occurred in Massachusetts. If the venue is improper, then under 28 U.S.C., §1406(a), this court either dismisses the case or if "it be in the interest of justice" transfers it to another district or division in which it could have been brought. The Defendants are not seeking a "forum non conveniens" transfer under 28 U.S.C., §1404(a).

As noted in the Memorandum and Order of Judge O'Toole in Rooney v. Walt Disney World Co., Civil Action No. 02-12433-GAO (D. Mass. November 25, 2003 [28 U.S.C., §1391(a)(2)] (**Exhibit 2** hereto) "The cases construing subsection two are spare." There follows in Rooney a discussion of the First Circuit decision in Uffner v. LaReunion Francaise, S.A., 244 F.2d 38 (1st Cir. 2001).

Uffner was a diversity suit brought in the District of Puerto Rico against an insurer for allegedly wrongful denial of a claim for loss of a yacht in waters off the coast of Puerto Rico. The district court dismissed on two grounds – no personal jurisdiction and improper venue. The First Circuit reversed both holdings.

The court noted that the 1990 amendment of §1391(a) changed the venue test from where the "claim arose" to where a "substantial part of the events . . . giving rise to the claim occurred." 244 F.2d 38, 42.

The Plaintiff's allegations taken as true establish that the events giving rise to the claim occurred at the offices of CPS in California, Washington, D.C. and Wisconsin (First Amended Complaint, Paragraph 13). Allegedly, the Defendants engaged in a "moderate [sic] smear campaign" (paragraph 25) and made false accusations to CPS

7

(Parargraphs 26 –29, 31 and 32).   In Nevada, the Defendants allegedly made false statements to state officials.

Even under the relaxed post – 1990 standard of §1391(a), there is no "substantial" nexus with Massachusetts.   The Plaintiff has selected Massachusetts because the Plaintiff's operation is here.   The statute is designed "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial."   Uffner, 244 F.2d at 43 quoting LeRoy v. Great W. United Corp., 443 U.S. 173, 183-4 (1979).

## II.    Motion to Dismiss for Failure to State Causes of Action (Rule 12(b)(6)

### A.    Count I - Defamation

Count I alleges false and defamatory statements that CSI "engaged in criminal activities that government agents had raided CSI's offices, and; that CSI would be unable to provide recruits to CPS due to government investigations." First Amended Complaint paragraph number 43. The Massachusetts Supreme Judicial Court notes that in some federal courts, defamation is a "disfavored" action and that a stricter standard of specificity is applied. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 432 n.7 (1991) Dorn v. Astra USA, 975 F. Supp. 388, 395 (D. Mass. 1997)

This Court in Silva v. Hit or Miss, 73 F. Supp.2d 39 (D. Mass. 1999) stated:

"Silva's complaint alleges that Hit or Miss and Avon 'communicated false and
misleading information to third parties regarding Plaintiff,' and that '[s]ubsequent
to the job termination, based on a false charge of theft, Silva had much difficulty
in securing any comparable work.' Complaint paragraph 40, 16. These vague,
general allegations do not state claims for defamation, as they do not provide 'the
precise wording of at least one sentence of the alleged defamatory statement(s).'
Dorn, 975 F. Supp. at 396 (listing pleading requirements); see also Phantom
Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 728 (1st Cir. 1992) ("in our
view, a Defendant is entitled to knowledge of the precise language challenged as
defamatory...."); Acciavatti v. Professional Servs. Group, Inc., 982 F. Supp. 69,
77-78 (D. Mass. 1997) (dismissing as 'factually deficient' defamation claim

which alleged that the Defendants 'caused false and defamatory statements about [Plaintiff] to be published to third parties, thereby injuring his reputation')."

At a minimum, Plaintiff would have to amend or refile this claim to meet the

defamation specificity rule.

### B.      Count II - Tortious Interference with Contractual and/or Advantageous Business Relations

The elements of an intentional interference claim are restated in Cacciola v.

Nellhaus, 49 Mass. App. Ct. 746 (2000) as follows:

> "The elements of such a claim are: "(1) a business relationship or contemplated contract of economic benefit; (2) the Defendant's knowledge of such relationship"; (3) the Defendant's intentional interference through improper motive or means; and "(4) the Plaintiff's loss of advantage directly resulting from the Defendant's conduct." Powers v. Leno, 24 Mass. App. Ct. 381, 384-385 (1987). Kurker v. Hill, 44 Mass. App. Ct. at 191. "A 'probable future business relationship from which there is a reasonable expectancy of financial benefit is enough.'" Powers v. Leno, 24 Mass. App. Ct. at 385, quoting from Owen v. Williams, 322 Mass. 356, 362 (1948)."

Improper motive or means must go beyond personal or financial gain or even

personal dislike:

> "one of the elements of intentional interference with contractual relations is improper motive or means on the part of the Defendant. Wright, supra at 476. We have said that the improper motive or malevolence required is "actual malice," Boothby v. Texon, Inc., 414 Mass. 468, 487 (1993), citing Gram, supra at 663, "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Wright, supra, quoting Sereni v. Star Sportswear Mfg. Corp., 24 Mass. App. Ct. 428, 433 (1987). The motivation of personal gain, including financial gain, however, generally is not enough to satisfy the improper interference requirement. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 817 (1990). Similarly, personal dislike will not warrant an inference of the requisite ill will. Boothby, supra at 487."

King v. Driscoll, 418 Mass. 576, 587 (1994).

Count II does not come close to setting forth the improper motive or means let alone going beyond financial gain. One can infer that it is financial gain when Plaintiff alleges "unfair competitive advantage" (¶1) stifling competition (¶22).

**C.    Count III - Malicious Abuse of Process**

It is not clear in Count III whether Plaintiff is alleging malicious prosecution or abuse of process when it alleges in paragraph 46 that "Defendants maliciously abused legal process against CSI by filing  false reports [sic] with government officials."

> "To make out a claim for malicious prosecution, a Plaintiff must prove: (1) the institution of criminal process against the Plaintiff with malice; and (2) without probable cause; and (3) the termination  of the criminal proceeding in favor of the Plaintiff."
> Gutierrez v. Mass. Bay, 437 Mass. 396, 405 (2002)"

> "Abuse of process presupposes the use of legal action [fn4] for an ulterior purpose..." Silva v. Building Inspector of West Bridgewater, 35 Mass. App. Ct. 451, 453 (1993) "Process" refers to papers issued by a court to bring a party or property within its jurisdiction. Powers v. Leno, 24 Mass. App. Ct. 381, 383 (1987) citing Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 390 (1975)."

Count III only alleges that Defendants filed false reports with government officials. This is neither malicious prosecution (no criminal action) nor abuse of civil process (no process issued).  No criminal or civil process was taken out. The count simply fails to allege a cause of action cognizable at law

**D.    Count IV - Civil Conspiracy**

Plaintiff's Amended Complaint added Count IV "Civil Conspiracy" again alleging intentional interference in Paragraphs 55 and 56 and added Paragraph 57 that "Defendants solicited other individuals and entities to engage in illegal acts designed to destroy CSI's [Plaintiff's] business reputation and to unlawfully harass CPS and the TSA

to induce CPS to sever its contractual relationship with CSI." This, read with new Complaint Paragraphs 34-37, is apparently designed to allege a common law conspiracy claim under Massachusetts law.

Massachusetts recognizes two theories for such a claim, the first involving coercion and the second requiring proof of two or more persons acting in concert, pursuant to a common design to commit a tortious act. Kurker v. Hill, 44 Mass. App. Ct. 184, 188-89 (1998). The first theory requires proof of coercion in the particular combination of Defendants rather than in the underlying conduct. This is "rare" and limited, involving a peculiar power to coerce by force of numbers. Mass. Laborers' Health and Welfare Fund v. Phillip Morris, Inc., 64 F. Supp.2d 236, 244 (1999). This theory is inapplicable here as there are no allegations about force of numbers or the like.

The second theory is akin to joint liability for concerted actions. There must be a combination of persons [acting] pursuant to an agreement to injure the Plaintiff. Gutierrez v. Massachusetts Bay, 437 Mass 396, 415 (2002).

As expressed in Kurker v. Hill, 44 Mass. App. Ct. 184, 189 (1998):

"Key to this cause of action is a Defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan. In the tort field, the doctrine appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result."

Here, the Plaintiff has not joined as Defendant(s) any known or unknown co-conspirator(s). The count is simply against the existing Defendants and merely duplicates Count II for interference. As such, it should be dismissed.

### E.    Count V -- Unfair or Deceptive Acts or Practices M.G.L. c.93A

11

M.G.L. c.93A, §11 contains a specific requirement applicable to business claimants (not present for section 9 claimants) that the conduct must have occurred "primarily and substantially with the Commonwealth."

See the three-part test in <u>Yankee Candle Co. v. Bridgewater Candle Co., LLC</u>, 259 F.3d 25, 47-48 (1st Cir. 2001); <u>Kenda Corp. v. Pot O'Gold Money Leagues</u>, 329 F.3d 216, 236 (1st Cir. 2003):

> "Nevertheless, these actions were ancillary to, and a direct result of, misrepresentations made and contracts signed in Michigan. As the SJC recognized in Kuwaiti Danish Computer Co., when 'virtually all the conduct that can be said to be unfair or deceptive' occurs outside the Commonwealth, there can be no Chapter 93A liability. <u>Kuwaiti Danish Computer Co.</u>, 78 N.E.2d at 800."

In Count V, the Plaintiff does not even allege that the Defendants offending conduct occurred primarily and substantially in Massachusetts. To the contrary, the allegations of Paragraphs 26, 28, 30 31, and 32 make it clear that any actionable activity of Defendants occurred outside of Massachusetts. Under no stretch of the imagination can the alleged misconduct be deemed to have taken place in Massachusetts.

**F.** **<u>Failure to State Grounds of Liability as to Defendant Margaret R. Cronfeld</u>**

The allegations against Defendant Margaret R. Cronfeld are "Upon information and belief, all of the actions taken by Mr. Cronfeld were taken with the knowledge and/or participation of Ms. Cronfeld." Complaint Paragraph 38.

There is no civil cause of action for mere knowledge or acquiescence.

> "To establish a civil conspiracy, a Plaintiff must demonstrate that "a combination of persons [acted] pursuant to an agreement to injure the Plaintiff." J.R. Nolan & L.J. Sartorio, Tort Law §99, at 136 (2d ed. 1989). "It is not sufficient to prove joint tortious acts of two or more persons . . ." <u>Id.</u> at 134. The Plaintiffs did not offer evidence that the Defendants agreed together to violate the Plaintiffs' civil rights. The only evidence that could possibly support a conspiracy theory was the

errors in the police reports and evidence that on officer had copied a section of his police report verbatim form another. This evidence is insufficient to establish an "agreement" among the Defendants. The judge's refusal to submit the claim to the jury was not in error."

Gutierrez v. Mass. Bay, 437 Mass. 396, 415 (2002). See the discussion of civil conspiracy, supra, in part III D.

## CONCLUSION

For the above stated reasons, the Defendants' three (3) motions to dismiss should be allowed. In the event, the jurisdictional motion (12(b)(2)) is denied and venue is improper (12(b)(3)), the Defendants have requested either dismissal or a §1406(a) transfer to Nevada. If the jurisdiction and venue motions are denied, the Court should allow the 12(b)(6) motion for failure to state causes of action.

Respectfully submitted,
By their attorneys,

Robert M. Bonin, Esquire
(BBO# 049100)
BONIN & MARASHIAN
77 Franklin Street, 4th Floor
Boston, Massachusetts 02110
(617) 723-2525

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 2nd day of February, 2005 a copy of the foregoing was delivered to:

> John F. Tocci, Esq.
> Tocci, Goss & Lee, P.C.
> 35 India Street
> 5th Floor
> Boston, Massachusetts 02110.

Robert M. Bonin, Esquire

# Loislaw Federal District Court Opinions

FIRST ACT, INC. v. BROOK MAYS MUSIC COMPANY, (Mass. 2004)

FIRST ACT, INC., Plaintiff v. BROOK MAYS MUSIC COMPANY, Defendant

CIVIL ACTION NO. 03-12020-EFH

United States District Court, D. Massachusetts.

April 2, 2004

## MEMORANDUM AND ORDER

EDWARD HARRINGTON, Senior District Judge

This case comes before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. It is the original step in the judicial process to determine the legal authority to exercise judicial power prior to the exercise of such power. For the reasons set forth below, the Court denies the motion.

On October 17, 2003, Plaintiff First Act, Inc. ("First Act"), a Massachusetts corporation with its usual place of business in Massachusetts, initiated suit against Defendant Brook Mays Music Company, Inc. ("Brook Mays"), a Texas corporation with its corporate headquarters in Texas. Both plaintiff and defendant manufacture and sell musical instruments. The present lawsuit arises principally from a statement entitled "ISO Alert" issued by Brook Mays regarding the quality of First Act's instruments.**[fn1]** In its amended complaint, First Act alleges false advertising, defamation, commercial
**Page 2**
disparagement, intentional interference with existing and prospective business relationships, and a violation of Section 1 of the Sherman Act. Brook Mays responds with the present Motion to Dismiss, which argues that its contacts with Massachusetts are insufficient to justify this Court's exercise of personal jurisdiction over it. The matter has been fully briefed, and the parties argued to the Court on March 24, 2004.

At this stage of the litigation, the Court takes the facts alleged by the plaintiff as true, along with the facts alleged by the defendant, to the extent that they are uncontroverted. Mass. Sch. of Law at Andover. Inc. v. A.B.A., **142 F.3d 26**, **34** (1st Cir. 1998). Of course, the Court need not "credit conclusory allegations or draw farfetched inferences." Id. On this basis, the Court recounts facts which pertain to personal jurisdiction. Most importantly, Brook Mays sent the ISO Alert to 8,000 e-mail addresses across the country, including 60 to individuals who had provided a Massachusetts street address. Brook Mays' other contacts with Massachusetts are more limited. A very small amount of its revenue derives from sales of musical instruments to Massachusetts customers through its website.**[fn2]** In addition, Brook Mays has had occasional isolated and fortuitous contacts with Massachusetts.

As in any diversity case, the requirements of both the Massachusetts long-arm statute and the Due Process clause of the federal Constitution must be met. Lyle Richards Int'l Ltd, v. Ashworth Inc., **132 F.3d 111**, **112** (1st Cir. 1997). In the present case, Brook Mays observes that the Massachusetts long-arm statute, Mass.Gen.L. ch. 223 A, § 3, has been construed to permit jurisdiction to the limits allowed by the federal Constitution. See Tatro v. Manor Care. Inc. **416 Mass. 763**, **771** (1994).

Page 3
Thus, Brook Mays urges the Court to follow an approach approved by the
First Circuit by "sidestep[ing] the statutory inquiry and proceed[ing]
directly to the constitutional analysis." Daynard v. Ness. Motley,
Loadholt, Richardson. & Poole, **290 F.3d 42**, **52** (1st Cir. 2002). At oral
argument, the parties implicitly conceded that jurisdiction exists under
the long-arm statute; thus the Court directs its attention to the
requirements of the Due Process clause of the federal Constitution.

The Due Process clause requires that a nonresident defendant have
sufficient minimum contacts with the forum so that exercise of
jurisdiction by the Court "does not offend `traditional notions of fair
play and substantial justice.'" Daynard, 290 F.3d at 52 (citing Int'l Shoe
Co. v. Washington, **326 U.S. 310**, **316** (1945)). The burden of persuading
the court that jurisdiction exists is ultimately upon the plaintiff.
Mass. Sch. of Law. 142 F.3d at 34.

A court may exercise either general or specific personal jurisdiction
over a defendant. General jurisdiction exists where a defendant "has
maintained a continuous and systematic linkage with the forum state;"
such a defendant "brings himself within the general jurisdiction of that
state's courts in respect to all matters, even those that are unrelated
to the defendant's contacts with the forum." Phillips Exeter Academy v.
Howard Phillips Fund. Inc. **196 F.3d 284**, **288** (1st Cir. 1999). First Act
has not argued that Brook Mays' limited contacts with Massachusetts
subject it to the general personal jurisdiction of this Court. Thus, only
specific jurisdiction is at issue in the present case.

The First Circuit has described the specific jurisdiction inquiry as a
"tripartite analysis." Phillips Exeter. 196 F.3d at 288. Under this
analysis, First Act must demonstrate (1) that its claims relate to or
arise out of Brook Mays' contacts with Massachusetts, (2) that those
contacts constitute purposeful availment of the benefits and protections
afforded by Massachusetts law, and (3) that the exercise of
Page 4
jurisdiction is reasonable in light of a number of factors that touch
upon fundamental fairness. Id. The first and third elements do not require
extended analysis in the present case.

The first asks the court to examine the "causal nexus between the
defendant's contacts and the plaintiff's cause of action." Phillips
Exeter, 196 F.3d at 289; see also Ticketmaster-New York. Inc. v. Alioto,
**26 F.3d 201**, **206** (1st Cir. 1994). The Brook Mays e-mail which was sent to
recipients who included 60 people in Massachusetts is a contact for
purposes of this inquiry. See Mass. Sch. of Law. 142 F.3d at 36 (stating
that "[t]he transmission of facts or information into Massachusetts via
. . . mail would of course constitute evidence of a jurisdictional
contact directed into the forum state . . ."). Because that very e-mail
is the subject of the counts in the present lawsuit, it is a contact
which is causally connected to the cause of action.**[fn3]**

The third element, reasonableness, is examined in light of the Gestalt
factors: (1) the burden on the defendant in appearing; (2) the interest
of the forum state in adjudicating the dispute; (3) the interest of the
plaintiff in obtaining convenient and effective relief; (4) the interest
of the judicial system in obtaining the most effective resolution of the
controversy; and (5) the interests common to all sovereigns in promoting
substantive social policies. Foster-Miller. Inc. v. Babcock & Wilcox
Canada. **46 F.3d 138**, **150** (1st Cir. 1995). To the extent these factors are
relevant in the present case, they favor
Page 5
exercise of jurisdiction. First, litigating in Massachusetts imposes no
extraordinary hardship upon Brook Mays, a corporation which does business
in many states. See Back Bay Farms v. Collucio, **230 F. Supp.2d 176**, **187**

(D.Mass. 2002). Second, a federal court in Massachusetts has an interest exercising jurisdiction over an entity that allegedly caused tortious injury within its borders. See Ticketmaster, 26 F.3d at 211. In considering the third factor, this Court observes the First Circuit's directive that "courts considering jurisdictional issues generally should `accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience.'" Foster-Miller. 46 F.3d at 151 (citing Ticketmaster, 26 F.3d at 211). The fourth and fifth elements do not greatly influence the Court's analysis.

Ultimately, then, the disposition of the present motion turns on a rather narrow legal issue: whether the 60 e-mails sent to persons with Massachusetts mailing addresses satisfy the purposeful availment element of a due process specific personal jurisdiction evaluation. The First Circuit has noted that Calder v. Jones. **465 U.S. 783** (1984), adopts an "effects test for determining purposeful availment in the context of defamation cases." Noonan v. The Winston Co., **135 F.3d 85**, **90** (1st Cir. 1998).**[fn4]** In Calder, a reporter and editor for the National Enquirer, acting in Florida, wrote an allegedly
Page 6
defamatory article about the popular entertainer Shirley Jones, who brought suit in California Superior Court. **465 U.S. at 784-85**. The Supreme Court approved jurisdiction because the defendants aimed intentional actions at the forum state, knew that their article was likely to have a devastating impact on the plaintiff, and knew that the brunt of the injury would be felt by the plaintiff in the forum state where she lived and worked and where the article would have the largest circulation. **465 U.S. at 789-90**; see also Hugel v. McNell, **886 F.2d 1**, **4** (1st Cir. 1989).

The first part of Calder's framework has been construed to require a showing that Brook Mays intentionally directed its actions towards Massachusetts. Noonan, 135 F.3d at 90. Brook Mays relies on two First Circuit cases to show that it did not act with the requisite intent; however, in the Court's view, these cases demonstrate just the opposite. In Noonan, the First Circuit refused to find jurisdiction over Lintas:Paris, a French advertising agency, which was sued by a Boston police officer for allegedly misusing his photograph in a cigarette ad published in a French magazine. 135 F.3d 87-88. Although some 305 copies of the magazine were distributed within Massachusetts, the First Circuit held that Lintas:Paris did not intentionally aim its actions toward the state, first because Lintas:Paris was apparently unaware that any magazines containing the offending advertisement would reach Massachusetts, and, second, because the relatively small number of magazines distributed in Massachusetts was evidence of a lack of purposeful contact with the state. 135 F.3d at 90-92. In the present case, Brook Mays was aware that e-mails would be sent to Massachusetts because Brook Mays itself sent the e-mail to persons on a list that it maintained and controlled. Unlike Lintas:Paris, which created an advertisement and placed it in a magazine unaware of the precise characteristics of that magazine's circulation, Brook Mays knew or should have known precisely who would receive the
Page 7
ISO Alert.**[fn5]**

The case of Ticketmaster-New York. Inc. v. Alioto, **26 F.3d 201** (1st Cir. 1994), is similarly unavailing for Brook Mays. In Ticketmaster, a lawyer in California received a telephone call from a Boston Globe reporter and made allegedly defamatory statements about the plaintiff. 26 F.3d 203-04. The First Circuit held that the lawyer-defendant did not purposefully avail himself of Massachusetts, noting both that he did not initiate contact with the reporter and that he had no effective control over the newspaper's subsequent decision to republish his statements.**[fn6]** 26 F.3d at 208-09. Again, the present case is rather different. Brook

Mays both created and distributed the ISO Alert. There was no other entity which decided whether or not to distribute the ISO alert. Thus, Brook Mays acted with the requisite intent to purposefully avail itself of the benefits and protections of Massachusetts law.

The remaining requirement of the Calder test asks the Court to analyze the "injurious effects" of the alleged actions. Noonan, 135 F.3d at 90. In Calder, the Court focused on the facts that the defendants knew that their article was likely to have a devastating impact on the plaintiff and knew that the brunt of the injury would be felt by the plaintiff in the forum state where she lived and worked and
**Page 8**
where the article would have the largest circulation.
**465 U.S. at 789-90.** In the present case, Brook Mays expected its article to have a strong negative impact on First Act. Indeed, the ISO Alert appears designed to ensure that customers who read it do not purchase First Act instruments. Further, Brook Mays also expected the majority of effects of its statement to be felt in Massachusetts. Like Shirley Jones, who lived and worked in California, First Act, a Massachusetts corporation with its usual place of business in Massachusetts, lives and works in Massachusetts. At the same time, some impact of the ISO Alert is also likely to be felt in the southern states where First Act competes with Brook Mays. Further, while the reporter and editor in Calder knew that the National Enquirer was circulated more widely in California than in any other state, here the circulation of the ISO alert in Massachusetts was relatively small. However, the fact that Brook Mays controlled the distribution of the ISO alert by sending it to e-mail addresses on a list it maintains suggests that Brook Mays knew it was sending the statement into First Act's home state. See also note 5, supra. Ultimately, recognizing that the question is close, the Court concludes that Brook Mays has alleged sufficient injurious effects on First Act in Massachusetts to satisfy this prong of the Calder analysis.

Because all elements of the specific jurisdiction analysis are satisfied in the present case, this Court concludes that its exercise of personal jurisdiction over Defendant Brook Mays passes muster under the Due Process clause of the federal Constitution. For this reason, the Court denies Brook Mays' Motion to Dismiss.

SO ORDERED.

[fn1] "ISO" stands for Instrument-Shaped Object.

[fn2] First Act reports that sales to Massachusetts residents last year amounted to approximately $24,000. Brook Mays reports that its total revenue last year exceeded $155,000,000.

[fn3] At oral argument, counsel for Brook Mays argued that First Act's showing on this point was insufficient, because First Act has not proffered evidence that it was damaged specifically by the 60 e-mails that were sent to Massachusetts. In light of First Circuit precedent, the Court doubts that causation need be parsed so finely. See Hugel v. McNell, **886 F.2d 1**, **5** (1st Cir. 1989) (sustaining personal jurisdiction in New Hampshire over nonresident defendants who provided allegedly defamatory material to the Washington Post for nationwide publication). Further, at least as to the defamation claim, damages are not an essential element. According to the Massachusetts Supreme Judicial Court, "statements that may prejudice the plaintiff's profession or business," which First Act alleges the ISO alert to be, are "actionable without proof of economic loss." Ravnikar v. Bogoiavelnsky, **438 Mass. 627**, **630** (2003). In fact, even an undamaged plaintiff may recover nominal damages in Massachusetts. Id.

[fn4] First Act argues that the Court need not analyze the effects of Brook Mays' ISO Alert, citing Murphy v. Erwin-Wasay Inc., **460 F.2d 661**

(1st Cir. 1972), for the proposition that "there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation" because the sender of such a statement purposefully avails itself of the benefits and protections of Massachusetts law merely by virtue of sending the statement into the forum. Id. at 664. First Act relies on Murphy to argue that when Brook Mays sent the ISO Alert via e-mail to Massachusetts, it similarly purposefully availed itself of Massachusetts law and thus subjected itself to the personal jurisdiction of this Court.

The Court does not accept this argument for several reasons. First, Murphy dealt primarily with interpreting the Massachusetts long-arm statute, rather than constitutional due process concerns. Second, the First Circuit has subsequently expressed "profound reservations" about extending this rationale of Murphy beyond claims for fraudulent misrepresentation. See Ticketmaster, 26 F.3d at 205 n. 5. Consequently, the Court uses the effects test originating from Calder v. Jones to analyze purposeful availment. It should be noted that the First Circuit decided Murphy well before the Supreme Court's decision in Calder.

[fn5] Furthermore, the relatively small number of e-mails sent to Massachusetts do not evince a lack of purposeful contact in the present case. The Ninth Circuit has observed that "mailing to regular subscribers, even though few, is not random or fortuitous and is not even necessarily isolated . . . it is not clear why [mailing a small number of newspapers into the forum] loses magnitude as a contact simply because the Daily News does a lot of other things elsewhere." Gordy v. Daily News. L.P., **95 F.3d 829**, **833-34** (9th Cir. 1996) (finding personal jurisdiction over newspaper which distributed only 13 to 18 copies containing allegedly defamatory material to subscribers in the forum).

[fn6] It should be noted that Ticketmaster did not employ the Calder approach to analyzing purposeful availment. The Calder approach was approved for defamation cases in this circuit in Noonan, decided four years after Ticketmaster. Rather, Ticketmaster evaluated purposeful availment by examining the voluntariness and foreseeability of the defendant's actions, which is the typical analysis in non-defamation cases. However, the facts of Ticketmaster and the First Circuit's analysis nonetheless illuminate this Court's evaluation of the present case under the Calder framework.
**Page 1**

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved

# Loislaw Federal District Court Opinions

ROONEY v. WALT DISNEY WORLD CO., (Mass. 2003)

MARGARET ROONEY, Plaintiff v. WALT DISNEY WORLD CO. and WALT DISNEY

PARKS AND RESORTS, LLC, Defendants

CIVIL ACTION NO. 02-12433-GAO

United States District Court, D. Massachusetts

November 25, 2003

### MEMORANDUM AND ORDER

GEORGE O'TOOLE, District Judge

Margaret Rooney, a Massachusetts resident, brought this action to recover for injuries she sustained while vacationing at a Walt Disney World resort in Florida. The defendant Walt Disney World Co. has moved to dismiss for lack of personal jurisdiction, invoking Fed.R.Civ.P. **12**(b)(2). The defendant Walt Disney Parks and Resorts, LLC has moved to dismiss for failure to state a claim, invoking Fed.R.Civ.P. **12**(b)(6). Alternatively, the defendants have moved to transfer venue to the United States District Court for the Middle District of Florida. For the reasons set forth below, the defendants' motions are all DENIED.

## I. **Personal Jurisdiction Over Walt Disney World Co.**

### A. **Standard of Proof**

"The most commonly used method of determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit

Page 2

v. Gar-Tec Prods., Inc., **967 F.2d 671**, 675 (1st Cir. 1992). This prima facie standard may be unfair to an out-of-state defendant, and a court may be required to hold an evidentiary hearing and resolve factual disputes, "when the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiffs affidavits are `patently incredible.'" Id. at 676 (citations omitted). Here, the plaintiff need not make more than a prima facie showing because the material facts are not in dispute and the affidavits are not incredible. Applying the prima facie standard to the personal jurisdiction dispute, I "tak[e] facts affirmatively alleged by plaintiff as true and constru[e] disputed facts in the light most hospitable to plaintiff." Ticketmaster-New York, Inc. v. Alioto, **26 F.3d 201**, 203 (1st Cir. 1994).

### B. **Summary of Facts**

Disney Enterprises, Inc. ("Enterprises") is the parent corporation of a number of Disney entities (collectively, "Disney"). Walt Disney World Co. ("World Co."), a subsidiary of Enterprises, owns and manages the Walt Disney World Resort complex ("Resort") in Florida which includes the BoardWalk Inn and Villas resort hotel ("BoardWalk"). World Co. does not directly conduct or solicit business or advertise in Massachusetts. Walt

Disney Parks and Resorts LLC ("Parks and Resorts"), another subsidiary of
Enterprises, purchases hotel rooms and theme park tickets from World Co.
and resells them to customers. It also advertises nationally and owns and
operates a Central Reservation Center in Florida at which it takes
reservations for the vacation packages it sells. Walt Disney Travel Co.,
Inc. ("Travel Co."), also a subsidiary of Enterprises, purchases and
resells travel services for a fee. Travel Co. advertises in newspapers
and operates a toll-free telephone number which customers can call to
obtain information concerning travel to Disney resorts.

During 2000, Travel Co. advertised in the Boston area concerning
vacation opportunities at the Resort. In early 2000, Rooney and her
husband viewed a number of advertisements for the
**Page 3**
Resort in Boston area newspapers and on Boston area television
stations. In March 2000, in response to the advertising campaign, they
called Travel Co.'s toll-free telephone number to inquire about
vacationing at the Resort. Travel Co.'s operator offered to send them a
promotional video describing accommodations, attractions, and vacation
packages at the Resort. After receiving and viewing the video, Rooney
called Parks and Resorts' Central Reservation Center and made a
reservation to vacation at the Boardwalk.

In June 2000, Rooney and her husband vacationed at the BoardWalk. She
has alleged that during their stay she was injured by a BoardWalk
employee, and she seeks damages from World Co. and Parks and Resorts for
the employee's negligent acts.

### C. **Long-Arm Jurisdiction**

This Court has personal jurisdiction over an out-of-state defendant in
a diversity case if the defendant is within the reach of the
Massachusetts long-arm statute and if the exercise of personal
jurisdiction comports with the due process requirements of the Fourteenth
Amendment. See, e.g., Alioto, 26 F.3d at
204.

The Massachusetts long-arm statute provides, in pertinent part, that
"[a] court may exercise personal jurisdiction over a person, who acts
directly or by an agent, as to a cause of action in law or equity arising
from the person's (a) transacting any business in this
commonwealth. . . ." Mass. Gen. Laws ch. 223 A, § 3. "To satisfy the
requirements of the long-arm statute, Section 3(a), the defendant must
have transacted business in Massachusetts and the plaintiffs' claim must
have arisen
**Page 4**
from the transaction of business by the defendant." Nowak v.
Tak How Invs. Ltd., **94 F.3d 708,** 712 (1st Cir. 1996) (citing
Tatro v. Manor Care, Inc., **625 N.E.2d 549,** 551 (Mass. 1994)).

In Tatro, a case concerning a Massachusetts resident who was
injured at a California hotel, the Supreme Judicial Court stated,

The "transacting any business" clause [in § 3]
has been construed broadly. Although an isolated
(and minor) transaction with a Massachusetts
resident may be insufficient, generally the
purposeful and successful solicitation of business
from residents of the Commonwealth, by a defendant
or its agent, will suffice to satisfy this
requirement. It is obvious that the defendant,
which solicited and obtained meeting and
convention business from at least ten
Massachusetts businesses, and maintained telephone
and mail contact with them, transacted business in

the Commonwealth during the relevant period.

We also think that the defendant's acceptance of
the plaintiffs room reservation formed part of the
defendant's overall purposeful solicitation of
hotel business from residents of Massachusetts.

625 N.E.2d at 551-52 (citations and internal quotation marks
omitted, alteration in original); see also Nowak, 94 F.3d at
712 (Hong Kong hotel's solicitation of business and acceptance of
reservation from Massachusetts resident sufficient to satisfy long-arm
statute requirements).

   Guided by Tatro and Nowak. I have no difficulty
finding that World Co.'s solicitation of business from Massachusetts
residents, through the joint activities and agency of its sister
corporations in the Disney family, are sufficient to satisfy the
requirements of the long-arm statute. Travel Co. directed its advertising
campaign at Massachusetts residents via the Boston area media for the
specific purpose of inducing them to go to Florida and stay, as paying
guests, at World Co. 's hotel. The advertising campaign had the hoped-for
effect: Rooney, enticed by the advertisements, contacted Travel Co. for
more information. Travel Co.'s operators were ready for the call and
offered to send to Massachusetts additional material, including a
promotional video, intended to encourage Rooney's interest in a trip to
the Resort. After receiving and viewing the additional
**Page 5**
material that Travel Co. mailed to her in Massachusetts, she called
Parks and Resorts' Central Reservation Center to book the vacation the
advertisements had promised. As a result of the successful efforts to
solicit business from Massachusetts customers, Rooney traveled to the
BoardWalk where she sustained the injuries that gave rise to this action.

   The Massachusetts long-arm statute states that "[a] court may exercise
personal jurisdiction over a person, who <u>acts directly or by an
agent</u>, as to a cause of action in law or equity arising from the
person's (a) transacting any business in this commonwealth. . . ."
Mass. Gen. Laws ch. 223 A, § 3 (emphasis added). The record, viewed
in Rooney's favor, reflects that Parks and Resorts and Travel Co. acted
as World Co.'s agents when they solicited business from and transacted
business with Rooney in Massachusetts. Accordingly, Parks and Resorts'
and Travel Co.'s Massachusetts activities can be imputed to World Co. to
bring it within the reach of the long-arm statute.

### D. **Constitutional Constraints**

   To determine whether exercising personal jurisdiction comports with the
constraints of the Constitution, the First Circuit applies a three-part
test:

   First, the claim underlying the litigation must
   directly arise out of, or relate to, the
   defendant's forum-state activities. Second, the
   defendant's in-state contacts must represent a
   purposeful availment of the privilege of
   conducting activities in the forum state, thereby
   invoking the benefits and protections of that
   state's laws and making the defendant's
   involuntary presence before the state's courts
   foreseeable. Third, the exercise of jurisdiction
   must, in light of the Gestalt factors, be
   reasonable.

United Elec. Workers v. 163 Pleasant St. Corp.,
**960 F.2d 1080**, 1089 (1st Cir. 1992).

Page 6

## 1. **Relatedness**

In approaching the "arise out of, or relate to" inquiry, the First Circuit applies a standard that "represents a small overlay of `but for' on `proximate cause'":

> When a foreign corporation directly targets
> residents in an ongoing effort to further a
> business relationship, and achieves its purpose,
> it may not necessarily be unreasonable to subject
> that corporation to forum jurisdiction when the
> efforts lead to a tortious result. The
> corporation's own conduct increases the likelihood
> that a specific resident will respond favorably.
> If the resident is harmed while engaged in
> activities integral to the relationship the
> corporation sought to establish, we think the
> nexus between the contacts and the cause of action
> is sufficiently strong to survive the due process
> inquiry at least at the relatedness stage.

Nowak, 94 F.3d at 715-16. In Nowak, the Court found that although the nexus between defendant's solicitation of business in Massachusetts and the injuries suffered in Hong Kong "does not constitute a proximate cause relationship, it does represent a meaningful link between [defendant's] contact and the harm suffered." Id. at 716. This precedent, when applied to the facts described above, compels the same result.

## 2. **Purposeful availment**

Again in Nowak, the First Circuit explained that for purposes of the purposeful availment analysis:

> Our two focal points are voluntariness and
> foreseeability. The defendant's contacts with the
> forum state must be voluntary — that is, not
> based on the unilateral actions of another party
> or a third person. In addition, the defendant's
> contacts with the forum state must be such that he
> should reasonably anticipate being haled into
> court here.

Id. at 716 (citations omitted). Here, Disney targeted its advertising campaign at Massachusetts to lure Massachusetts residents to vacation at its resort in Florida. Those advertisements directed residents, including Rooney, to contact Travel Co.'s information center for further information. After receiving the inquiries it sought, Travel Co. mailed information to Rooney in Massachusetts. That information directed her to contact Parks and Resorts' Central Reservation Center, which she
Page 7
did, and the Reservation Center booked her vacation reservation. The result — Rooney's trip to Florida — was the very result defendants sought when they directed their advertisements at Massachusetts residents. Their efforts to solicit business from Massachusetts customers "rendered foreseeable the possibility of being haled into a Massachusetts court." Id. at 717.

## 3. **Fairness and Justice**

The First Circuit applies the following "gestalt factors" to determine whether the exercise of personal jurisdiction "comports with traditional

notions of fair play and substantial justice":

> (1) the defendant's burden of appearing, (2) the
> forum state's interest in adjudicating the
> dispute, (3) the plaintiffs interest in obtaining
> convenient and effective relief, (4) the judicial
> system's interest in obtaining the most effective
> resolution of the controversy, and (5) common
> interests of all sovereigns in promoting
> substantive social policies.

Pleasant St., 960 F.2d at 1088. "The purpose of the
gestalt factors is to aid the court in achieving substantial justice,
particularly where the minimum contacts question is very close. In such
cases, the gestalt factors may tip the constitutional balance."
Nowak, 94 F.3d at 717.

Here, given the nature and extent of the activities in Massachusetts it
is not substantially unjust to subject World Co. to the jurisdiction of
this Court. World Co.'s burden of appearing in Massachusetts is no
greater than that placed on any party that must litigate in a foreign
jurisdiction. Id. at 718. "Massachusetts has a strong interest
in protecting its citizens from out-of-state solicitations for goods or
services that prove to be unsafe, and it also has an interest in
providing its citizens with a convenient forum in which to assert their
claims." Id. at 718. Massachusetts is a more convenient forum
for Rooney, and "[t]his Court must accord deference to the [plaintiffs]
choice of
**Page 8**
a Massachusetts forum." Id. The remaining factors do
nothing to tip the constitutional inquiry in World Co.'s favor.

Accordingly, the exercise of personal jurisdiction over World Co. does
not offend the due process protections of the Constitution.

## II. **Parks and Resorts' Motion to Dismiss**

Parks and Resorts has moved to dismiss invoking Fed.R.Civ.P.
**12**(b)(6) and arguing that it is not a proper defendant to this suit
because it did not own, control, operate, or maintain the BoardWalk
property where Rooney sustained her injuries. Parks and Resorts submits
affidavits with its motion and asks that I treat it as a motion for
summary judgment. At this stage of the action, I decline the invitation
and treat it as a motion to dismiss pursuant to Fed.R.Civ.P. **12**(b)(6).
In so doing, I accept as true the facts Rooney has alleged in the
complaint.

She has alleged that while vacationing at the BoardWalk in Florida she
was injured by the negligent acts of the BoardWalk's employee. She
specifically has alleged that Parks and Resorts "owned, controlled,
operated and/or maintained" the resort at which she was injured. Compl.
¶ 3. These allegations, which I accept as true, are sufficient to
survive Parks and Resorts' motion to dismiss.

## III. **Defendants' Motion to Transfer**

The defendants' have moved for a transfer of venue to the United States
District Court for the Middle District of Florida. There are two bases
upon which the defendants may seek a transfer of venue. Under 28 U.S.C.
¶ 1406(a), a court shall dismiss a case or transfer it to a different
venue if venue is improper in the forum where the case was brought. Under
28 U.S.C. ¶ 1404(a), a court
**Page 9**
in its discretion may transfer a case to a different venue if the
court determines that an alternative venue is more convenient and justice

will be better served.

The difference between § 1406(a) and § 1404(a) is material. The former provides that if venue is improper in this district, then the court should either dismiss the case or "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." **28 U.S.C. § 1406**(a). However, if venue is proper in this district, then under § 1406(a) the court does not reach the question whether the interest of justice would require transfer to another venue. Alternatively, under § 1404(a), even if venue is proper in this district, the court has the discretion to transfer to a different venue if it is more convenient and justice is served.

The motion papers suggest that the parties have not focused on whether the defendants' motion to transfer is based on improper venue under § 1406(a) or forum non conveniens under § 1404(a). The defendants' memorandum in support of their motion cites § 1406(a), suggesting a motion based on improper venue. The citation, however, is followed by arguments that Florida is a more convenient forum and a lack of arguments that venue is improper in Massachusetts. Further confusing matters, Rooney's opposition cites only § 1404(a) and seeks to rebut the defendants' motion as though it were based on forum non conveniens. Rooney too fails to address whether venue is proper in Massachusetts. The defendants' reply brief does not identify the inconsistency or shed any additional light on the issue. Based on the defendants' citation to § 1406(a) and notwithstanding their arguments concerning the convenience of the forum rather than the propriety of the venue, I

**Page 10**

treat the motion as a motion based on improper venue and conclude that venue is proper in this district.**[fn1]**

Section 1391(a) provides that, in a diversity action, venue is proper in either "(1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. . . ." Massachusetts is not a proper venue under subsection one. Massachusetts is a proper venue under subsection two if "a substantial part of the events . . . giving rise to the claim occurred" in Massachusetts. The cases construing subsection two are spare.

The First Circuit, in Uffner v. La Reunion Francaise, S.A., **244 F.3d 38** (1st Cir. 2001), identified the principles which inform the analysis. The Court "look[s] . . . not to a single `triggering event' prompting the action, but to the entire sequence of events underlying the claim." Id. at 42. "[A]n event need not be a point of dispute between the parties in order to constitute a substantial event giving rise to the claim." Id. at 43. Venue may be proper where a single event in the forum "was one part of the historical predicate for the instant suit," even though that single event was "not related to the principal question for decision." Id. at 42-43.

Applying these principles, I find that venue is proper in Massachusetts. As I have already discussed at length above, numerous events occurred in Massachusetts. While those events may bear little weight in the ultimate determination of Rooney's tort claim, they are a significant part of the "entire sequence" and "historical predicate" of events giving rise to her claim.

This conclusion is supported by the similarity of (1) § 1391(a)(2)'s requirement that "a

**Page 11**

substantial part of the events . . . giving rise to the claim"

must have occurred in the forum; (2) the long-arm statute's requirement
that "plaintiffs' claim must have arisen from the transaction of business
by the defendant" in the forum, <u>Nowak</u>, 94 F.3d at 712; and (3)
the constitutional requirement that "the claim underlying the litigation
must directly arise out of, or relate to, the defendant's forum-state
activities," <u>Pleasant St.</u>, 960 F.2d at 1089. Having already
concluded that personal jurisdiction is proper because Rooney's claim
arises from the defendants' activities in Massachusetts, I also conclude
that venue is proper.

## IV. **Conclusion**

   The defendants' motions to dismiss the complaint pursuant to
Fed.R.Civ.P. **12**(b)(2) and (6) or, in the alternative, to transfer venue are
DENIED.

   It is SO ORDERED.

[fn1] Were I to consider defendants' motion as based on <u>forum non
conveniens</u>. I would reach the same result and deny the motion.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved