# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **CARDILLO & SONS, INC.,** | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 04-12496-JLT |
| **OFFICIAL SECURITY, INC.** | ) |
| **MRH INTERNATIONAL, INC.,** | ) |
| **DARRYL CRONFELD, and** | ) |
| **MARGARET R. CRONFELD,** | ) |
| Defendants. | ) |

## OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

### INTRODUCTION AND FACTS

This is an action brought by the plaintiff Cardillo & Sons, Inc. ("CSI" or the "Plaintiff") which seeks damages and other relief against the defendants Official Security, Inc. ("OSI"), MRH International, Inc, ("MRH"), Darryl Cronfeld ("Mr. Cronfeld") and Margaret R. Cronfeld ("Ms. Cronfeld") (collectively the "Defendants"). The factual allegations are, of course, fully set forth in the Plaintiff's First Amended Complaint and will be summarized and incorporated, as necessary, in the legal argument section of this memorandum. The Plaintiff has set forth five counts against the Defendants for: Defamation (Count I); Tortious Interference with Contractual and/or Advantageous Relations (Count II); Malicious Abuse of Process (Count III); Civil Conspiracy (Count IV); and, Unfair or Deceptive Acts or Practices – M.G.L. c. 93A (Count V). The Defendants weakly assert that the Complaint fails to state any of these five claims. The Defendants' motion, apparently a mere afterthought to their jurisdiction and venue motions, should be denied as to all counts.

**LEGAL ARGUMENT**

**I.     The Defendants Cannot Meet the Exacting 12(b)(6) Standard**

As the Court is no doubt aware, the standard of review it must apply in considering a motion to dismiss pursuant to Rule 12(b)(6) is quite demanding.  "A complaint should not be dismissed unless it is apparent ***beyond doubt*** that the plaintiff can prove ***no set of facts*** in support of his claim that would entitle him to relief."  Green v. Rhode Island, 398 F.3d 45, 48 (1st Cir. 2005) (emphasis added) (citing Conley v. Gibson, 355 U.S. 41, 45- 46 (1957)).  In reviewing a 12(b)(6) motion a Court must "accept as true the well-pleaded facts in the [] complaint and indulge all reasonable inferences in [the plaintiff's] favor."  Id.  As demonstrated below, the Defendants have failed to meet this burden.

**II.    Count I – Defamation**

"Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt."  Correllas v. Viveiros, 410 Mass. 314, 319, (1991); Draghetti v. Chmielewski, 416 Mass. 808 (1994) ("The test whether a publication is defamatory is whether, in the circumstances, the writing discredits the plaintiff 'in the minds of any considerable and respectable segment in the community.'").  "Imputation of criminal conduct is defamatory per se."  McAvoy v. Shufrin, 401 Mass. 593, 597-598 (1988); Draghetti v. Chmielewski, 416 Mass. 808 (1994) (same).

In the case at hand, the Plaintiff has clearly stated a defamation claim as CSI has alleged that, among other things, the Defendants falsely imputed criminal conduct to the Plaintiff.  CSI has specifically alleged that Defendants knowingly uttered false and defamatory statements to third parties regarding CSI.  Complaint ¶ 42.  CSI specifically alleged that the "Defendants, among other things, falsely informed CPS that: CSI had engaged in criminal activities; that

2

government agents had raided CSI's offices, and; that CSI would be unable to provide services to CPS due to government investigations." Complaint ¶ 43. CSI has alleged that "from their Las Vegas base, the Defendants sent numerous electronic mail messages to various CPS officials in Sacramento, California and Washington, DC, falsely asserting, among other things, that CSI had engaged in criminal conduct and, as a result of a pending investigation, may be unable to provide all promised services during 2005. In fact, there has never been a criminal investigation of CSI and CSI has never been hindered in any way from providing superior services to CPS." Complaint ¶ 28.

CSI, moreover, has alleged that "Mr. Cronfeld also made false statements to government officials or other persons or entities to induce such officials, persons or entities to hinder CSI's ability to do business. Upon information and belief, Ms. Cronfeld had knowledge of and assented to the making of such false and defamatory statements." Complaint ¶ 44. Finally, CSI has alleged that it suffered severe damage as a result of these actions including, but not limited to, the loss of a lucrative contract with CPS, the diminution of its reputation in the business community and lost business revenue. Complaint ¶ 45. The Complaint is replete with additional detailed allegations setting forth the Defendants' defamatory actions. Complaint ¶¶ 29-39.

Defendants' assertion that the Plaintiff's allegations lack specificity is absurd in light of the specific facts set forth in the Complaint and recited above, including CSI's unambiguous assertion that the Defendants falsely imputed criminal conduct to the Plaintiff. As noted by the Draghetti Court, "presence of quotation marks is not an element of the tort, and is not required." The Plaintiff has clearly stated a defamation claim.

3

**III.     Count II – Tortious Interference with Contractual and/or Advantageous Business Relations**

The Defendants assert that the Plaintiff has failed to assert a claim for tortious interference with contractual and/or advantageous business relations because they are required to assert that the Defendants were motivated by actual malice -- "a spiteful malignant purpose, unrelated to the legitimate corporate interests." The Defendants are incorrect. The element of "actual malice" is only required in the employee-employer context where an employee pressing a tortious interference claim must overcome the employer's "supervisory privilege". See Agati v. Burlington Ob-Gyn Assoc., 56 Mass. App. Ct. 1112 (2002). As noted by the Agati Court, and numerous other decisions, even those cited by the Defendants, "[w]here, as here, the claim is asserted against ***an individual official of the employer***, the plaintiff is required to show, as to 'improper motive or means,' that the 'controlling factor' in the alleged interference was 'actual' malice . . . [which] has been defined as 'a spiteful, malignant purpose, unrelated to the legitimate corporate interest' of the employer." (emphasis added and citations omitted); see also, Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 781, (2001) (When this action is brought against the plaintiff's supervisor the "supervisor who discharges or recommends discharge of an employee is not liable for interference with the employee's contract or business relations unless the supervisor's actions were motivated by actual malice.").

In a business against business tortious interference case, the plaintiff need only demonstrate "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's intentional and malicious interference with it; (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct." Comey v. Hill, 387 Mass. 11 (1982); see also Speen v. Crown Clothing Corp., 102 F.3d 625, 634 (1st Cir.1996).

4

Here, CSI has alleged that it enjoys an advantageous business relationship and a contractual relationship with CPS, that the Defendants intentionally and wrongfully interfered with CSI's relationship with CPS by attempting, without legal right or justification, to induce CPS to sever its contractual relationship with CSI and that CSI has incurred significant damage as a result of the Defendants' intentional interference, including, but not limited to, the loss of a lucrative business contract, damage to its reputation and costs associated with responding to false allegations relayed by the Defendants to CPS. Complaint ¶¶ 47-49. The Complaint is replete with additional detailed allegations setting forth the Defendants' tortious interference. Complaint ¶¶ 29-39. The Plaintiff has clearly stated a tortious interference claim.

### IV. Count III - Malicious Abuse of Process

Consistent with their other misguided assertions, the Defendants appear to argue that the "malicious abuse of process" claim asserted by the Plaintiff does not exist under Massachusetts law. The Defendants argue that the Plaintiff must therefore really be asserting a claim of malicious prosecution, which requires different elements, including the element that the prosecution of other proceedings be terminated in favor of the plaintiff. The Defendants are mistaken.

Massachusetts certainly does recognize a cause of action for malicious abuse of process. "The tort of malicious abuse of process consists in the use of lawful process primarily for a purpose for which it is not designed." J.R. Nolan & L.J. Sartorio, Tort Law § 82, at 108 (2d ed.1989). "The elements of an abuse of process claim are that: '(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.'" Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 407 (2002); quoting Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775-776, (1986).

In the case at hand, the Plaintiff has alleged that the Defendants maliciously abused legal process against CSI by filing a false reports with government officials. Complaint ¶ 51. Plaintiff specifically alleged that, "on November 16, 17 and 18, 2004 the defendant Darryl Cronfeld made false statements concerning CSI to officials with the Nevada Office of the Attorney General, Private Investigator's Licensing Board and other Nevada state officials. Mr. Cronfeld took such actions for malicious purposes unrelated to the Defendants' legitimate business interests." Complaint ¶ 30. The Plaintiff alleged that the Defendants illegally utilized legal process to cause CSI to expend significant resources in responding to the false reports and that CSI incurred significant damage as a result of the Defendants' malicious abuse of process, including, but not limited to damage to its reputation and costs associated with responding to the baseless allegations and other claims asserted by the Defendants. Complaint ¶¶ 52 and 53. The Plaintiff has clearly stated a malicious abuse of process claim.

**V.     Count IV - Civil Conspiracy**

The Defendants correctly recognize that in Massachusetts, a cause of action for civil conspiracy will lie where the plaintiff has alleged that the defendants engaged in a "common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result." Stock v. Fife, 13 Mass. App. Ct. 75, 82 n. 10 (1982); see also, Kurker v. Hill, 44 Mass. App. Ct. 184, 188-189 (1998). Massachusetts has essentially adopted the following Restatement definition of the tort:

> According to the Restatement:
>
> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him.

6

Restatement (Second) of Torts, § 876 (1977). "The Supreme Judicial Court has implied that the Massachusetts common law of civil conspiracy encompasses liability of this nature, even if the elements of liability are not in all respects identical to those defined in this section of the Restatement." Aetna Casualty & Surety Co. v. P & B Autobody, 43 F.3d 1546 (1st Cir. 1994) (citing Kyte v. Philip Morris, Inc., 408 Mass. 162 (1990)).

Here, it is clear from the Complaint that the Plaintiff asserted that all of the Defendants engaged in concerted tortious activities including defaming the Plaintiff and illegally interfering with the Plaintiff's advantageous and/or contractual relations. The Plaintiff has also alleged that the Defendants solicited others to join their conspiracy – another act taken in concert to further the illicit goals of the conspiracy. The Plaintiff has clearly stated a civil conspiracy claim.

## VI.     Count V – Unfair or Deceptive Acts or Practices

The Defendants seek the dismissal of the Plaintiff's 93A claim stating that the Plaintiff has not alleged that the Defendants wrongful conduct occurred "primarily and substantially" in Massachusetts. "Under Massachusetts law, the burden is upon the defendant to disprove the 'primarily and substantially' condition." Amcel Corp v. International Exec. Sales, Inc., 170 F.3d 32, 34-35 (1st Cir. 1999). The Amcel Court noted that

> at the complaint stage, inferences are taken, and doubts are resolved, in favor of the non-moving party, see Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988); and given Amcel's location in Massachusetts, its claim of injury there, and other allegations, there was a reasonable chance (or more) that Amcel might prevail at trial on the "primarily and substantially" issue based on the generous reading of this phrase in the case law.

In determining whether the conduct occurred "primarily and substantially" in Massachusetts, a court will consider three factors: "(1) where the defendant engaged in unfair or unscrupulous conduct; (2) where the plaintiff was on the receiving end of the unfair or unscrupulous conduct; and (3) the situs of plaintiff's losses due to the unfair and unscrupulous

7

conduct." KPS & Associates, Inc. v. Designs By FMC, Inc., 318 F.3d 1, 24 (1st Cir. 2003). Construing the facts most favorable to the Plaintiff, the Defendants have failed to meet their burden. The pleadings indicate that while most of the Defendants' illegal conduct occurred outside of Massachusetts, some occurred in Massachusetts. The evidence clearly demonstrates that the Plaintiff's damages were suffered in Massachusetts and the Plaintiff was on the "receiving end" of the Defendants' unscrupulous conduct primarily in Massachusetts.

Based upon the foregoing, the Defendants have failed to meet their heavy burden of demonstrating that their misconduct occurred "primarily and substantially" outside of Massachusetts. The Plaintiff has clearly stated a claim of Unfair or Deceptive Acts or Practices pursuant to M.G.L. c. 93A.

### VII.     Margaret Cronfeld

The Defendants, while admitting that the Plaintiff has alleged that Margaret Cronfeld "participated" in all of the wrongful conduct alleged in the Complaint, assert that she should be dismissed as a party because the Plaintiff also alleged, in the alternative that she may have been aware of and acquiesced in the wrongful acts of her husband which conduct benefited her companies. The Defendants' assertion is meritless. Margaret Cronfeld is the President and majority stockholder of MRH. Although Daryl Cronfeld asserts that he is the sole owner and officer of OSI, it is equally true that OSI appears to have been awarded a substantial portion of the TSA/CPS contract based upon its status as a "woman-owned business." At a minimum, discovery is needed to discern whether Mr. Cronfeld has committed perjury in his affidavit filed with this Court or has committed perjury when he affirmed to the TSA, through CPS, that OSI is a woman-owned business. Plaintiff also has the right to explore Margaret Cronfeld's involvement in the wrongful acts taken on behalf of her companies.

## **CONCLUSION**

For the foregoing reasons, the Defendants' motion to dismiss the Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) should be denied in its entirety.

Respectfully Submitted,

CARDILLO & SONS, INC.

By its attorneys:

    /S/ John F. Tocci
John F. Tocci, Esq., BBO# 562139
Tocci, Goss & Lee, PC
35 India Street, 5th Floor
Boston, Massachusetts 02110
(617) 542-6200

Dated: March 18, 2005