UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CARDILLO & SONS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO.  04-12496-JLT |
| OFFICIAL SECURITY, INC. MRH INTERNATIONAL, INC., DARRYL CRONFELD, and MARGARET R. CRONFELD, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**OPPOSITION TO DEFENDANTS MOTION TO DISMISS FOR LACK OF
JURISDICTION OVER PARTIES**

**INTRODUCTION**

This is an action brought by the plaintiff Cardillo & Sons, Inc. ("CSI" or the "Plaintiff") which seeks damages and other relief against the defendants Official Security, Inc. ("OSI"), MRH International, Inc, ("MRH"), Darryl Cronfeld ("Mr. Cronfeld") and Margaret R. Cronfeld ("Ms. Cronfeld") (collectively the "Defendants").  As indicated below, the parties are engaged in the security services industry and are direct competitors.  In particular, the parties have competed and continue to compete for contracts, including competition for contracts in Massachusetts, relating to the provision of security services at various assessment sites throughout the United States where the federal Transportation Safety Administration (the "TSA") and its prime contractor CPS Human Resource Services ("CPS") conduct assessments of candidates for airport security positions.  Significantly, *the Defendants admit that they have engaged in activity in Massachusetts which activity is directly related to the TSA/CPS contract*.  Upon losing several

contract bids to CSI over the course of the past two years, the Defendants have engaged in a campaign of unfair and deceptive acts against CSI including, but not limited to defamation of CSI and its officers and/or employees, harassment of entities with which CSI enjoys advantageous and/or contractual business relations and filing false reports with the government or government contractors. Defendants' took all acts willfully and maliciously and for the sole purpose of destroying CSI's business reputation in order to gain an unfair competitive advantage.

## THE JURISDICTIONAL FACTS

The following facts are taken from the Plaintiff's First Amended Complaint ("Complaint") from the Defendants' Affidavit filed in support of their various motions ("Def. Aff.") and the Affidavit of Walter Cardillo, Jr. which verifies the factual allegations of the Complaint and is filed in support of the Plaintiff's oppositions to the Defendants' jurisdictional motions to dismiss ("Cardillo Aff.").

MRH International, Inc. ("MRH") and Official Security, Inc. ("OSI") are engaged in the security services industry and the individual defendants are owners and officers of the corporate defendants. Def. Aff., ¶ 2. The individual Defendants reside in Nevada and the corporate Defendants are organized under the laws of the State of Nevada. The Defendants admit that they are in competition with the plaintiff for the provision of security services pursuant to the TSA/CPS contract. Def. Aff., ¶¶ 3-5. Significantly, *the Defendants admit that OSI has recently conducted business in Massachusetts.* Specifically, OSI provided security services to or in conjunction with the Peabody Police Department less than eighteen months ago. Def. Aff., ¶ 3. OSI also admits that it provided security services on behalf of an unnamed Massachusetts contractor approximately ten months ago. Id. Finally, OSI admits that it performed services in conjunction with the Edgartown Police in September 2004. Id. The work performed by OSI in

September 2004 was the provision of security services at Martha's Vineyard airport pursuant to the TSA/CPS contract. Cardillo Aff. ¶ 7. OSI competed with CSI for the provision of these services in Massachusetts.[1] OSI also competed with CSI for the provision of services to CPS at numerous other sites throughout the United States. Cardillo Aff. ¶ 7.

Recently, CPS announced that CSI would provide security services at all of the soon to be established permanent Hiring Centers, including a center in Boston, Massachusetts. Complaint ¶ 23; Cardillo Aff., ¶ 8. Defendants and the Plaintiff submitted bids for the provision of services at all CPS sites, including Boston. Cardillo Aff., ¶ 8.

As alleged in the Complaint, upon losing a significant amount of business to CSI, the Defendants engaged in illegal actions including, but no means limited to, falsely informing CPS that CSI had engaged in criminal activities and falsely informing CPS that government agents had raided CSI's offices. Complaint ¶ 26. From their Las Vegas base, the Defendants sent numerous electronic mail messages to various CPS officials in Sacramento, California and Washington, DC, falsely asserting, among other things, that CSI had engaged in criminal conduct and, as a result of a pending investigation, may be unable to provide all promised services during 2005. Complaint ¶ 28. The Defendants made several written and verbal threats to CPS officials demanding that CPS sever its contract with CSI. Complaint ¶ 29. The Defendants also met with various CPS officials in or around Washington, D.C. in an attempt to wrongly interfere with CPS's contract and relationship with CSI. Complaint ¶ 32. The

---

[1] In their Affidavit, the Defendants state that OSI is 100% owned and operated by the individual defendant Daryl Cronfeld. Def Aff., ¶¶ 2 and 3. The Plaintiff understands, however, that OSI was awarded all work it has performed pursuant to the TSA/CPS contract as a "woman-owned business" as that term is defined under federal law, including regulations promulgated by the Federal Small Business Administration. Cardillo Aff. ¶¶ 5 and 6. At a minimum, rather than dismissing this action, the Court should allow Plaintiff to conduct discovery on the limited issue of personal jurisdiction to ascertain each individual Defendant's involvement with each corporate defendant and their involvement in business and other activities in Massachusetts. Boit v. Gar-Tec Products, Inc., 967 F. 2d 671, 680-81 (1st Cir. 1992).

Defendants, moreover, specifically stated to various individuals and entities in numerous states that they intended to file frivolous or false reports with government agencies designed to draw CPS into frivolous litigation that could threaten its contract with the TSA. Complaint ¶ 29. The Defendants repeated defamatory statements to numerous individuals and entities in various states encouraging them to join in their illegal campaign against CSI and such e-mails were forwarded to numerous other jurisdictions, including Massachusetts. Complaint ¶ 32.

## **LEGAL ARGUMENT**

The Defendants correctly point out that, in a diversity case such as this, the jurisdictional inquiry focuses upon the Massachusetts long-arm statute, which is construed as broad as is allowed under the due process clause of the Fourteenth Amendment. See Cambridge Literary Properties, Ltd. v. W. Goebel, 295 F.3d 59, 62-63 (1st Cir. 2002). The facts set forth above give rise to a prima facie case of personal jurisdiction under Sections 3(a) and 3(c) of the long-arm statute which provides that:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in the commonwealth . . . (c) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

The Section 3(a) "transacting any business" clause is liberally construed and can be satisfied by sending a single telex or making several telephone calls to a Massachusetts plaintiff. JMTR Enterprises, L.L.C. v. Duchin, 42 Supp. 2d 87, 95-96 (D. Mass. 1999). There is no requirement that the defendant "set foot in Massachusetts" in connection with the subject matter of the lawsuit. Even a single telephone call to a Massachusetts resident may be sufficient to confer personal jurisdiction under section 3(a). Tatro v. Manor Care, Inc., 416 Mass. 763, 768-

69 (1994).  The requirement that a cause of action "arise out of" the transacting of business is a similarly broad "but for" test which is easily met in this case.  <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 184 F. Supp. 2d 55, 64 (D. Mass. 2001) (*reversed on other grounds*, 290 F.3d 42); <u>Tatro v. Manor Care, Inc.</u>, 416 Mass. 763, 770-71 (1994).  In this case, the Defendants were clearly involved in competitive activities with the Plaintiff.  They conducted business in Massachusetts under the TSA/CPS contract and they were motivated by their desire to gain an unfair advantage over the Defendants in conducting their illegal activities.  Their illegal activities, moreover, included forwarding numerous electronic mail messages throughout the United States, including Massachusetts, soliciting illegal activities and defaming the Plaintiff.  Their activities interfered with the Plaintiff's Massachusetts contracts and advantageous relations and have caused and continue to cause the Plaintiff damage in Massachusetts.

  As to Section 3(c), forwarding numerous electronic mail messages throughout the United States, including Massachusetts, soliciting illegal activities and defaming the Plaintiff and causing the Plaintiff damages in Massachusetts clearly constitute "causing tortious injury in this commonwealth by an act or omission outside this commonwealth."

  The Defendants claim that the Plaintiff has not satisfied the Fourteenth Amendment's due process test because, among other things, the Defendants do not have the required "minimum contacts" with Massachusetts.  In essence, the Defendants claim that there cannot be personal jurisdiction over them unless they called, wrote or had a meeting in Massachusetts in which they directly engaged in illegal conduct.  The Defendants are incorrect. The due process test has been described as follows:

> The due process cases impose three requirements on the exercise of *specific* personal jurisdiction over out-of-state defendants. . . . [T]he defendant[s] must have purposeful 'minimum contacts' with the state. Further, the exercise of jurisdiction must be 'reasonable' under the circumstances. The third requirement . . . is that the plaintiff's claims be related to the defendant's contacts.

See Cambridge Literary Properties, Ltd. v. W. Goebel, 295 F.3d 59, 62-63 (1st Cir. 2002).  The facts set forth above give rise to a prima facie case of personal jurisdiction satisfying the due process clause.

First, by the Defendants' own admission they have had purposeful "minimum contacts" in Massachusetts.  The Defendants admit that they have provided security services in Massachusetts on at least three occasions in the recent past including security services pursuant to the TSA/CPS contract and a contract with a private Massachusetts entity.  It is black letter law that where an entity transacts business in the Commonwealth "pursuant to a contract with a Massachusetts entity" – as the Defendants have admitted – the "minimum contacts" prong of the jurisdictional test is satisfied.  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995); see also, Pritzker v. Yari, 42 F.3d 52, 62 (1st Cir. 1994) (Minimum contacts exist where nonresident defendant, by contract, had "knowingly acquir[ed] an economically beneficial interest" in commercial activities in Massachusetts).

Second, as indicated above, the Plaintiff's claims, although they relate to the Defendants' actions in many of the United States, are directly attributable to activities in which the Defendants directly and indirectly engaged in Massachusetts.  The Defendants conducted business in Massachusetts under the TSA/CPS contract and they were motivated by their desire to gain an unfair advantage over the Defendants in conducting their illegal activities.  Their illegal activities, moreover, included forwarding numerous electronic mail messages throughout the United States, including Massachusetts, soliciting illegal activities and defaming the Plaintiff.

6

Finally, the Plaintiff has also satisfied the reasonableness or "Gestalt" prong of the due process test. As recently noted by the First Circuit "[t]he Gestalt factors rarely seem to preclude jurisdiction where relevant minimum contacts exist." Cambridge Literary Properties, Ltd. v. W. Goebel, 295 F.3d 59, 66 (1st Cir. 2002). (Gestalt prong is satisfied as "the plaintiff has an interest in litigating conveniently in its home state, which in turn has an interest in affording its citizens a convenient forum.")  This case presents similar jurisdictional Gestalt considerations as was at issue in Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60-61 (1st Cir. 2002). In that case the court noted and found as conclusive:

> [Plaintiff's] interest in bringing his action in this forum, given the traditional deference accorded to a plaintiff's choice of forum, weighs in favor of personal jurisdiction. This is particularly true in light of Massachusetts's stake in being able "to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." . . . Finally, efficient administration of justice favors jurisdiction in Massachusetts, where this action is already proceeding against the [] defendants.

Those same considerations exist here. First, the Plaintiff brought this action in Massachusetts and that choice should be granted deference. Second, Massachusetts has an interest in protecting the rights of its corporate citizens, particularly from unfair competition which may violate M.G.L. c. 93A. Finally, the case is proceeding in Massachusetts and, by the Defendants' own admission, concern actions they took in Washington, D.C., Sacramento, CA and numerous other jurisdictions.

Numerous decisions by judges in this judicial district, moreover, have upheld the exercise of personal jurisdiction where there exist more tangential "contacts" between the defendant and Massachusetts than are presented here.

For example, in <u>JMTR Enter., L.L.C. v. Duchin</u>, 42 F. Supp.2d 87, 96-98 (D. Mass. 1999) this Court found that personal jurisdiction existed over an officer of a Rhode Island corporation pursuant to Section 3(a) of the long-arm statute based on phone calls and correspondence from agents of the officer to Massachusetts residents.  These contacts satisfied both the long-arm statute and the due process requirements of the Fourteenth Amendment.

In <u>Charles River Data Sys., Inc. v. Oracle Complex Sys. Corp.</u>, 788 F. Supp. 54, 57 (D. Mass. 1991), Judge Skinner ruled that the court had personal jurisdiction over a California-based chief executive officer under both the "transacting business" section of the long-arm statute (§3(a)) and the due process requirements of the Fourteenth Amendment.  The factual basis for the ruling was the plaintiff's allegation that the individual had ordered a Virginia corporation to breach its contract with a Massachusetts corporation, apparently by initiating communication from California to Virginia.  The Court ruled that this conduct constituted a connection with Massachusetts such that the individual "could reasonably anticipate being haled into court" here. <u>Id.</u>, at 57, quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S.  286, 297 (1980).

**CONCLUSION**

Based upon the foregoing, there is no basis to dismiss this action on jurisdictional grounds or to favor another jurisdiction over Massachusetts.  See Cambridge Literary Properties, Ltd. v. W. Goebel, 295 F.3d 59, 66 (1st Cir. 2002) (Simple fact that another venue may be more favorable to defendants does not effect the reasonableness of Massachusetts jurisdiction).  The Defendants' motion to dismiss for lack of jurisdiction should therefore be denied.

        Respectfully Submitted,

        CARDILLO & SONS, INC.

        By its attorneys:

        /S/ John F. Tocci
        John F. Tocci, Esq., BBO# 562139
        Tocci, Goss & Lee, PC
        35 India Street, 5th Floor
        Boston, Massachusetts 02110
        (617) 542-6200

Dated: March 18, 2005